UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6054-Civ-HUCK
MAGISTRATE JUDGE SORRENTINO

RICHARD G. GARCIA,      :

      Plaintiff,     :

v.                :        <u>REPORT OF</u>
                      <u>MAGISTRATE JUDGE</u>

KEN JENNE, et al.,     :

      Defendants.    :

_____

FILED by _____ D.C.
MAG. SEC.

AUG 30 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.    MIAMI

## I. <u>Introduction</u>

Richard G. Garcia, who is currently confined as a state prisoner at Century Correctional Institution, has filed a <u>pro se</u> civil rights complaint for damages pursuant to 42 U.S.C. §1983, concerning events which took place when he was previously confined at the Division of Community Corrections ("DOCC") and the Broward County Main Jail ("BCMJ"), between February and July of 1999.

The gravamen of the complaint is Garcia's claim that the defendants allegedly deprived him of his right to freely exercise his religious beliefs as a Roman Catholic. Garcia also alleges that: 1) food served was not nutritious, and was prepared and/or served without adequate concern for sanitation; 2) conditions where he was confined posed a health hazard to inmates and staff; 3) on one occasion he was released two days late from disciplinary confinement; 4) he was denied access to the courts; and 5) the cost of items sold in the commissary is too high.

The defendants designated in the complaint are: 1) Ken Jenne, Sheriff of Broward County; 2) William Hitchcock; 3) Donna Stone; 4)



Chaplain Braswell; 5) Lieutenant O.J. Mihm; 6) Sergeant Slagle; and
7) Trinity Food Service.

## II. The Allegations in the Complaint

Garcia alleges that beginning on February 14, 1999, while at
the DOCC, he made requests to the Chaplain's Office "regarding
Catholic Mass and the services of a Catholic Priest." He was told
to ask the deputy when services were scheduled and to tell the
deputy that "you want to attend." He alleges that defendant
Braswell misled him into believing that there were services for
Catholics. The plaintiff alleges that he learned that while
religious leaders, including ministers, rabbis, and mullahs, came
from the community to the jail to lead services for inmates of
various faiths, including those who are Baptist, Protestant,
Jehovah's Witness, Seventh Day Adventist, Jewish, and Muslim, there
were no priests to offer Roman Catholic mass.

On February 18, 1999, the plaintiff made a request to Braswell
that he be provided a vegetarian diet on the Fridays during Lent,
and Good Friday, and his request "went unanswered, or totally
disregarded."

On March 11, 1999, the plaintiff filed a grievance complaining
that the "B.S.O. "catered to every major denomination other than
Catholic," and he received a response from Braswell's Office
stating "We are sorry that there are not Catholic Services at
D.O.C.C." The plaintiff states that the responding officer "again

2

asked [him] to provide 'the name of your clergy, church address, and telephone number and we will get you a visit.'"

The plaintiff complained further through the grievance procedure, asking that Catholic services be provided for the Catholic inmates, and on May 16, 1000 he was informed by Officer Mihm that Roman Catholic services were scheduled for Tuesday nights, but that "we cannot make them show up."

It is apparent from the plaintiff's allegations, however, that Roman Catholic priests did come from time to time to minister to the needs of inmates in custody of the Broward Sheriff's Office, because the plaintiff alleges in the complaint, that he has been "incarcerated at B.S.O. since 2-5-99 and has only seen a catholic priest on three separate occasions."[1]

The plaintiff filed another grievance on or about May 17, 1999, complaining that religious volunteers other than Catholics were coming to the DOCC twice to three times per week to hold services in his dormitory area. These services, however, were not of his faith, and he did not wish to attend them. The plaintiff was informed by defendants Stone and Mihm that if "he had a problem with said services" he was to notify his housing deputy so that the deputy could have him taken to the holding cell for the duration of each service. The plaintiff contends that the offer to remove him

---

[1]    Records pertaining to the plaintiff which are maintained and published by the Florida Department of Corrections indicate that after sentencing on September 1, 1999 in criminal case Nos. 99-2374, 99-4304, and 4818 in Broward County, he was committed to the Florida Department of Corrections, where he was received on September 9, 1999.

from the dormitory to a holding cell during services for faiths other than his own "is more like punishment than a resolution."

The plaintiff also complains that he "was further denied his religious freedom when defendant Braswell failed to provide him with "religious icons, i.e. rosary beads and scapular," which he intended to use "strictly for prayer purposes."

In addition to his complaint that he was not provided vegetarian meals of Fridays during Lent, the plaintiff alleges generally that the food is inadequate, does not meet recommended dietary allowances, and is not prepared under sanitary conditions. He provides no details concerning the nutritional value of meals served, but claims that on March 18, 1999, he found two dead cockroaches on his dinner tray, and alleges that "a high degree of personal hygiene is not maintained" and that "trustees as well as the deputies handling the serving of food do not wear the proper outer garments."

The plaintiff also alleges that conditions relating to ventilation and heating in the showers and housing areas at the DOCC, and the placement of inmates' unsanitized mattresses on the floor in overcrowded areas infested with insects and vermin, pose a health hazard to inmates and staff.

The plaintiff further alleges that following his transfer from the DOCC to the BCMJ for disciplinary reasons on July 7, 1999, he was given "six days lock down," but was entitled to credit for three days already spent in confinement. He alleges that he

4

remained on "lock down" at the BCMJ for 48 hours beyond the expiration of his six day sentence, which he contends should have expired on or about July 13, 1999.

The plaintiff alleges that he was denied access to the Courts due to limitations on photocopying and direct access to the law library, lack of adequate legal books, and lack of trained law clerks to provide assistance with research and drafting documents.

Finally, the plaintiff alleges that items offered for sale to inmates by the commissary are sold at prices which "exceed fair market value."

### III. Discussion

For reasons discussed below the plaintiff's claims subject to dismissal pursuant to 28 U.S.C. §§1915(e)(2)(B)(ii), and 1915A(b)(1), for failure to state a claim upon which relief may be granted.

On April 26, 1996, the Prison Litigation Reform Act of 1995 ("PLRA") was signed into law, modifying the requirements for proceeding *in forma pauperis* in federal courts. Under the April 26, 1996 enactments, 28 U.S.C. §1915 was amended. As amended, it reads in pertinent part, as follows:

Sec. 1915 Proceedings in Forma Pauperis

\* \* \*

(e)(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court

5

shall dismiss the case at any time if the court
determines that -

                    *    *    *

    (B) the action or appeal -

                *    *    *

    (i)  is frivolous or malicious;

    (ii) fails to state a claim on which
    relief may be granted; or

    (iii) seeks monetary relief from a de-
    fendant who is immune from such relief.


On April 26, 1996, the following statute, 28 U.S.C. §1915A,
which is a companion to the provisions of 28 U.S.C. §1915(e)(2)(B),
was enacted:

    Sec. 1915A. Screening

    (a) Screening.--The court shall review, before
    docketing, if feasible or, in any event, as soon as
    practicable after docketing, a complaint in a civil
    action in which a prisoner seeks redress from a
    governmental entity or officer or employee of a
    governmental entity.

    (b) Grounds for Dismissal.--On review, the court
    shall identify cognizable claims or dismiss the
    complaint, or any portion of the complaint if the
    complaint-

    (1) is frivolous, malicious, or fails to state
    a claim upon which relief may be granted; or

    (2) seeks monetary relief from a defendant who
    is immune from such relief.
    (footnote 1 continued)

    (c) Definition.--As used in this section, the
    term prisoner means any person incarcerated or
    detained in any facility who is accused of,
    convicted of, sentenced for, or adjudicated
    delinquent for, violations of criminal law or the
    terms and conditions of parole, probation, pretrial
    release, or diversionary program.

This Court must hold the allegations of a pro se complaint to a less stringent standard than the formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 419 (1972). Such a complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Haines v. Kerner, supra; Conley v. Gibson, 355 U.S. 14 (1957); Cannon v. Macon County, 1 F.3d 1558, 1565 (11 Cir. 1993).

Notwithstanding the liberal pleading standard of Haines v. Kerner, supra, in order to state a claim under §1983, a plaintiff must show that conduct under color of state law, complained of in the §1983 suit, violated the plaintiff's rights, privileges, or immunities under the Constitution or laws of the United States. Whitehorn v. Harrelson, 758 F.2d 1416, 1419 (11 Cir. 1985). Moreover, it is well settled that bare, conclusory allegations are not enough. Fullman v. Graddick, 739 F.2d 553, 556-57 (11 Cir. 1984).

## A. Free Exercise of Religion

As discussed in Section II of this report, above, the plaintiff alleges that the defendants deprived him of his right to freely exercise his religious beliefs as a Catholic. The essence of his claim is that he was denied equal protection because he contends that he was treated differently than inmates of other faiths.

7

Under the Free Exercise Clause of the First Amendment, an inmate must be accorded reasonable opportunity to practice his religion. What constitutes reasonable opportunity must be evaluated with reference to legitimate penological objectives such as rehabilitation, deterrence and security. Turner v. Safley, 482 U.S. 78, 89 (1987); O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987);[2] Bell v. Wolfish, 441 U.S. 520, 545-46 (1979); Mosier v. Maynard, 937 F.2d 1521 (10 Cir. 1991); McElyea v. Babbitt, 833 F.2d 196 (9 Cir.1987).

The Constitution's equal protection guarantee ensures that prison officials cannot discriminate against particular religions. See: Cruz v. Beto, 405 U.S. 319, 322 (1972). Prisons must afford an inmate of a minority religion a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." Id. at 322. Prisons, however, are not required to provide identical facilities or personnel to different faiths, see Id. at 322 n. 2, but rather must make a "good faith accommodation of the [inmate/prisoner's] rights in light of practical considerations." Freeman v. Arpaio, 125 F.3d 732, 737 (9 Cir. 1997); Allen v. Toombs 827 F.2d 563, 569 (9 Cir. 1987) (citing Gittlemacker v. Prasse, 428 F.2d 1 4 (3 Cir. 1970). To succeed on an equal protection claim the

---

[2]    Under the Turner/O'Lone standard, the factors to be considered in determining whether the "reasonableness" test has been met are: 1) whether there is a rational relationship between the regulation and the legitimate government interest being asserted; 2) whether the inmates have alternative means to exercise the right; 3) the impact that accommodation of the right will have on the prison system; and 4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest. Turner, supra at 89-90; Fromer v. Scully, 874 F.2d 69 (2 Cir. 1989).

plaintiff must show that officials intentionally acted in a discriminatory manner. <u>Freeman</u>, <u>supra</u> 125 F.3d at 737. Jail or prison officials have no affirmative duty to provide inmates of particular faiths full time chaplains or priests, and may fulfill their good faith efforts to accommodate an inmate plaintiff's rights through volunteers who come from the community outside the institution. <u>See Allen</u>, <u>supra</u> 827 F.2d at 569; <u>Akbar v. Gomez</u>, 122 F.3d 1069, 1997 WL 547944, *2 (9 Cir. (Cal.)).

The facts alleged by the plaintiff in this case do not indicate that the defendants discriminated against his faith by refusing to provide a reasonable opportunity for its exercise comparable to the opportunities afforded inmates of other faiths. <u>See Cruz v. Beto</u>, 405 U.S. 319, 322 (1972); <u>Thompson v. Kentucky</u>, 712 F.2d 1078, 1079-81 (6 Cir. 1983). The plaintiff acknowledges in his factual allegations that at the DOCC officials had designated Tuesday Nights as the time for visiting priests to conduct Catholic services. Although volunteer priests came to the institution with much less frequency than the plaintiff alleges that he desired, and apparently did not visit on a weekly basis, the plaintiff was attended to personally by a priest at least three times between during his seven month pretrial detention, and the plaintiff admits that jail officials offered to call a Catholic priest and request that he come to minister to the plaintiff's needs at any time that the plaintiff desired. The plaintiff alleges that he was new to the area, and was not a member of a congregation. He does not allege that the defendants at any time prevented him from calling a local Catholic church to ask for the services of a priest.

9

The plaintiff's claim that his request for a special vegetarian diet on Good Friday and on the Fridays during the 40 day season of Lent is not accompanied by allegations to support a claim of denial of the plaintiff's right to free exercise of his religious faith. The plaintiff alleges only that his request for a special "vegetarian" meal on Lenten Fridays was ignored. He does not allege that meat was served to him on those days, or that he was forced by jail officials to eat meat on Fridays during Lent. Even assuming *arguendo* that meat was served on one or more of the Fridays in the six week Lenten period prior to Good Friday, there are no facts alleged to indicate that if he did not eat a protein dish when served, the other food served on those days, along with the meals served the other six days of the week did not provide him with adequate nutrition. The plaintiff's allegations concerning wholesomeness of the food, which is a different non-religious claim, is discussed separately, below.

The plaintiff's allegation that he complained about services for inmates of other faiths being conducted in the dormitory where he was present, and that officials offered to remove him to a holding cell so that he would not have to hear those services, does not state a claim. The offers to remove the plaintiff to a cell where he could be safely held for a short period, was clearly an effort on the part of officials to accommodate the plaintiff, so that he would not have to be present during worship by persons of faiths differing from his own, and not punishment as suggested by the plaintiff. There is no constitutional requirement that jail officials provide other inmates a special place of worship within

10

the institution, away from the dormitory, solely to accommodate plaintiffs who do not wish to be present while others worship.

Finally, the plaintiff's allegation that Chaplain Braswell failed to provide him with "religious icons" (rosary beads and scapular), which he intended to use for prayer purposes, does not state a claim for denial of the plaintiff's rights under the First Amendment.

As noted <u>supra</u>, a plaintiff's right to free exercise of religion is limited by virtue of his incarceration. See <u>O'Lone v. Shabazz</u>, <u>supra</u> 482 U.S. 342, 348.

Prohibiting Roman Catholic inmates from possessing rosaries and scapulars pursuant to jail policy limiting personal possessions has been held not to violate the First Amendment, where alternative means of practicing the Roman Catholic religion at the jail exist, because the prohibition has a logical connection to a legitimate penological interest in prison security, by preventing the fabrication of weapons, and avoiding creation of an impression of favoritism toward Roman Catholic prisoners if they were to be allowed to have such items, which could cause unrest among inmates of other faiths. <u>Friend v. Kolodzieczak</u>, 923 F.2d 126, 127-28 (9 Cir. 1991). Among the alternative ways of practicing the Roman Catholic faith, as noted by the Court in <u>Friend</u>, are attending services, use of rosary beads and scapulars in the presence of a priest, receiving visits from religious workers, receiving sacraments of the Roman Catholic church such as confession and

communion, and saying the rosary with the aid of rosary pamphlets made of paper.

## B. Nutrition and Sanitation

The plaintiff has alleged that the food provided to him was not nutritious, that persons who brought him his trays did not wear special clothing, and that on one occasion he found two cockroaches on a meal tray. Based on these facts, the plaintiff alleges that the food was inadequate, and that it was prepared or handled under unsanitary conditions.

The plaintiff also alleges that other conditions existed where he was confined, which he contends posed a health hazard to both inmates and staff: 1) lack of adequate ventilation and heating in the showers and housing areas; and 2) requiring inmates to sleep on unsanitized mattresses, on the floor, in overcrowded dormitories, where there were insects and vermin.

The law concerning conditions of confinement is as follows.

Although the Constitution does not and the Court cannot dictate the general conditions that should exist in jails and prisons by substituting its views for those of legislators and jail administrators, the Constitution does require conditions of confinement imposed by states to meet certain minimum standards. Bell v. Wolfish, 441 U.S. 520, 562 (1979); Hamm v. DeKalb County, 774 F.2d 1567, 1571 (11 Cir. 1985), cert. denied, 475 U.S. 1096 (1986). The Eighth Amendment applied through the Fourteenth

Amendment prohibits the infliction of cruel and unusual punishment and thereby places limitations on the conditions in which the State may confine those convicted of crimes. Robinson v. California, 370 U.S. 660 (1962); Rhodes v. Chapman, 452 U.S. 337 (1981); Hamm v. DeKalb County, supra.

The United States Circuit Court of Appeals for the Eleventh Circuit has held that in order to prevail on an Eighth Amendment claim for damages under section 1983, in addition to the requirement that the defendant must have acted under color of state law, a plaintiff must prove three elements: 1) the infliction of unnecessary pain or suffering, Rhodes v. Chapman, 452 U.S. 337, 347 (1981); 2) deliberate indifference on the part of the defendant(s), Wilson v. Seiter, 501 U.S. 294, 302-03 (1991); and 3) causation, Williams v. Bennett, 689 F.2d 1370, 1389-90 (11 Cir. 1982). LaMarca v. Turner, 995 F.2d 1526, 1538-39 (11 Cir. 1993). The Court in LaMarca, supra, noted that the Supreme Court recently confirmed that the first two elements of an Eighth Amendment claim, the 'objective' and 'subjective' elements, must both be satisfied. Id. n.17 (citing Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 999-1000 (1992)).

Various conditions, alone or together, may make intolerable an otherwise constitutional term of imprisonment, Rhodes, supra at 347; Ingraham v. Wright, 430 U.S. 651, 669 n.38 (1977); however, only unnecessary and wanton infliction of pain rises to the level of cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312 (1986).

Only such a degree of disregard for the prisoner's rights, which offends evolving contemporary standards of decency and is repugnant to the conscience of mankind, separates official conduct that is actionable under Section 1983 from simple negligence which is not. When the plaintiff fails to allege and show proof of such an abuse, what may be an ordinary tort does not rise to the level of a constitutional violation actionable under Section 1983. Rhodes v. Chapman, supra at 347; Estelle v. Gamble, 429 U.S. 97, 106 (1976); Byrd v. Clark, 783 F.2d 1002, 1006 (11 Cir. 1986); Hamm v. DeKalb County, supra at 1572; Williams v. Bennett, 689 F.2d 1370, 1380 (11 Cir. 1982). Negligence, alone, cannot be a basis for recovery under §1983. Davidson v. Cannon, 474 U.S. 344 (1986); Daniels v. Williams, 474 U.S. 327 (1986); Estelle v. Gamble, supra.

The standard may be met if the state is deliberately indifferent to prisoners' basic necessities and fails to provide reasonably adequate food, clothing, shelter, and sanitation. Hamm v. DeKalb County, supra at 1572.

The plaintiff Garcia was a pretrial detainee at the time of the events alleged. As a pretrial detainee, his claims which would lie under the Eighth Amendment prohibition against cruel and unusual punishment if he had been a convicted prisoner, arise instead from the Due Process Clause of the Fourteenth Amendment. See: Bell v. Wolfish, 411 U.S. 520, 535 (1979); Hamm v. DeKalb County, 774 F.2d 1567, 1571-1574 (11 Cir. 1985). In the context of a pretrial detainee claim concerning conditions of confinement, the standards are the same as for an Eighth Amendment claim. Id.

14

The plaintiff's complaint concerning the nutritional value of the food served to him is not supported by any specific allegations. In the context of inmates who require normal diets (i.e., diets not indicated for medical reasons) the Constitution only requires that the prisoners be provided with reasonably adequate food. Hamm v. Dekalb County, 744 F.2d 1567 (11 Cir. 1985). The plaintiff Garcia fails to allege specific facts showing that the food served to him did not meet this standard. The facts alleged therefore do not suggest that he suffered a constitutional deprivation in relation to his dietary requirements.

Turning to Garcia's allegations about the other physical conditions he encountered at the DOCC, it is apparent that they did not rise to a constitutional level. The facts alleged concerning these claims do not suggest that the conditions Garcia faced were so egregious as to be repugnant to the conscience of mankind and offend evolving contemporary standards of decency.

Taking the plaintiff's allegations as true, even assuming arguendo that persons who delivered him his food did not wear special clothing, that on one occasion he found two cockroaches on his food tray, and further, assuming arguendo that the DOCC was crowded, and that Garcia had to sleep on an unsanitized mattress on a floor in an overcrowded dormitory, in allegedly unsanitary conditions, the facts alleged with regard to these conditions do not rise to the level of a constitutional deprivation.

Although Garcia makes these allegations concerning sanitation, and further alleges that the ventilation and heating in the showers and dormitories were inadequate, there are no allegations to

suggest physical injury, illness, or disease suffered by Garcia due
to the alleged improper handling of food, conditions in his area of
confinement, or alleged close proximity of other inmates to him.

Under the Prison Litigation Reform Act, §42 U.S.C. §1997e(e),
in order to assert a claim for which relief could be granted for a
claim of this kind, there must be a specific physical injury, i.e.,
an injury which is an "observable or diagnosable medical condition
requiring treatment by a medical care professional." Luong v. Hatt,
979 F.Supp. 481, 485-6 (N.D. Texas 1997). Mere "de minimis"
injuries, such as "scrapes, scratches, cuts, abrasions, bruises,
pulled muscles, back aches, leg aches, etc., which are suffered by
free world people in just every day living for which they never
seek medical professional care," which may last "even up to two or
three weeks," and which can be treated by "home remedy care," with
"over-the-counter drugs, heating pads, rest, etc., are excluded
from constitutional recognition under §1997e(e). Id. Moreover,
there can be no recovery for mental or emotional injury suffered
while in custody without such a physical injury, which rises above
the de minimis level. Siglar v. Hightower, 112 F.3d 191, 193 (5
Cir. 1997).

The plaintiff's claims relating to wholesomeness of the food
served to him, overcrowding, ventilation, heating, and sanitation,
are therefore subject to dismissal pursuant to 28 U.S.C.
§1915(e)(2)(B)(ii) for failure to state a claim.

C. <u>Failure to Release the Plaintiff from Disciplinary Confinement</u>

The plaintiff alleges that he was transferred to the BCMJ from the DOCC for disciplinary reasons, and that after he arrived at the BCMJ on July 7, 1999, he was placed in disciplinary confinement ("lock down") for six days. He contends that he because he was entitled to three days credit for time served he should have been released on July 13, 1999, but was not returned to the general inmate population until forty-eight hours later. The plaintiff claims that this was cruel and unusual punishment.

The Eighth Amendment does not apply, since the plaintiff Garcia was a pretrial detainee at the time of these events. Garcia's claim, which properly construed is a claim for denial of due process, since he was a pretrial detainee, is nonetheless foreclosed by the Supreme Court case of <u>Sandin v. Conner</u>, 515 U.S. 472 (1995)[3] because there is no suggestion, based on the facts in the complaint, that the conditions or any loss of privileges the plaintiff Garcia may have faced during the alleged two extra days on disciplinary confinement constituted "an atypical and significant hardship" on him "in relation to the ordinary incidents of prison life," <u>Sandin</u>, <u>supra</u> at 484; <u>Knecht</u>, <u>supra</u> at 1198.[4]

---

[3]      Following <u>Sandin</u>, only two instances exist where an inmate can claim a protected liberty interest under the due process clause (the first of which is inapplicable under the circumstances alleged): 1) under certain circumstances in which the prison's actions have the effect of altering his term of imprisonment; and 2) where the prison's restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, <u>supra</u> at 484; <u>Knecht v. Collins</u>, 903 F.Supp. 1193, 1198 (S.D. Ohio 1995).

[4]      Hardships which Garcia may have faced while on disciplinary confine-ment, which are typical of such confinement, e.g., temporary limitations on visitation, commissary, telephone, and recreation privileges, etc., are clearly

D. <u>Access to the Courts</u>

Plaintiff Garcia's allegations concerning access to the courts fail to state a claim and are subject to dismissal pursuant to §1915(e)(2)(B)(ii), because his claims are not accompanied by factual allegations which satisfy the requirements for establishing a claim of denial of access to the Courts under the landmark Supreme Court cases of <u>Lewis v. Casey</u>, 518 U.S. 343 (1996) and <u>Bounds, Correction Commissioner v. Smith</u>, 430 U.S. 817 (1977).

Although prisoners have a constitutional right to effective access to the courts <u>see</u>: <u>Lewis v. Casey</u>, and <u>Bounds v. Smith</u>, <u>supra</u>, that right is not without limits. It has been held to include reasonable access to a law library or adequate assistance from persons trained in the law. <u>Bounds</u>, <u>supra</u>; <u>Straub v. Monge</u>,

---

a *de minimis* level of restriction with which the Constitution is not concerned. Especially when the period of confinement was not lengthy. <u>See</u>: <u>Ingraham v. Wright</u>, 430 U.S. 651, 674 (1977); <u>Bell v. Wolfish</u>, 441 U.S. 520, 539 n. 21 (1979). The Courts post-<u>Sandin</u> have held that relatively short periods of confinement, with attendant losses of privileges or restrictions on privileges, including visitation, commissary, and recreation privileges, fall within the expected parameters of imprisonment, and do not impose an atypical hardship in relation to the ordinary incidents of prison life. <u>See</u>: <u>Wallace v. Conroy</u>, 945 F.Supp. 628, 635-36 (S.D.N.Y. 1996) (citing <u>Webb v. Artuz</u>, No. 93 Civ. 5985 (DLC), 1996 WL 452260, at *4 (S.D.N.Y. Aug. 8, 1996) (forty-five days in segregated confinement with loss of telephone, package and commissary privileges did not impose an atypical and significant hardship); <u>Louis v. Coughlin</u>, No. 92 Civ. 219C, 1996 WL 486806, at *6 (W.D.N.Y. Aug. 5, 1996) (thirty-three days in segregated confinement with restricted visitation, telephone, shower, commissary, and library privileges did not impose an atypical and significant hardship). Even a more lengthy period of disciplinary confinement, with attendant loss of privileges has been held to not rise to a constitutional level. <u>See</u>: <u>Wallace</u>, <u>supra</u> at 636 [citing <u>Nogueras v. Coughlin</u>, No. 94 Civ. 4094 (JSM), 1996 WL 487951, at *5 (S.D.N.Y. Aug. 27, 1996) (two-hundred ten days in disciplinary confinement with loss of telephone, package and commissary privileges did not impose an atypical and significant hardship) ].

815 F.2d 1467 (11 Cir. 1987); <u>Wainwright v. Davenport</u>, 697 F.2d 992 (11 Cir. 1993).

To establish a denial of access to the Courts, a plaintiff must show prejudice from the alleged constitutional violation. <u>Lewis v. Casey</u>, <u>supra</u>; <u>Cooper v. Delo</u>, 997 F.2d 376 (8 Cir. 1993); <u>Berdello v. Delo</u>, 972 F.2d 204 (8 Cir. 1992); <u>Chandler v. Baird</u>, 926 F.2d 1057, 1062-63 (11 Cir. 1991); <u>Henthorn v. Swinson</u>, 955 F.2d 351, 354 (5 Cir. 1992); <u>Richardson v. McDonnell</u>, 841 F.2d 120, 122 (5 Cir. 1988).

The plaintiff must show "some quantum of detriment" caused by the challenged conduct of state officials, resulting in the interruption and/or delay of the plaintiff's pending or contemplated litigation. <u>Jenkins v. Lane</u>, 977 F.2d 266, 268 (7 Cir. 1992), <u>quoting</u> <u>Shango v. Jurich</u>, 965 F.2d 289 (7 Cir. 1992). To show "some quantum of detriment," the complaint must allege specific facts such as court dates missed, an inability to make timely filings, or the loss of a case that otherwise could have been won. <u>Martin v. Davies</u>, 917 F.2d 336, 338 (7 Cir. 1990), <u>cert. denied</u>, 501 U.S. 1208 (1991).

The case of <u>Lewis v. Casey</u>, <u>supra</u>, makes clear that not just any prejudice will suffice. In <u>Lewis v. Casey</u>, the Supreme Court emphasized that it is vital to a claim of denial of access to the courts for the plaintiff to specifically demonstrate how he was harmed and prejudiced with respect to any litigation in which he was involved, <u>Id.</u>, 518 U.S. at 349-353. It is not sufficient to merely allege, for example, the denial of access to a law library, even if the denial is ongoing in nature. <u>Id.</u>, at 353 n.4. The Court

also stated that "the injury requirement is not satisfied by just any type of frustrated legal claim." Id., at 354. Rather, the plaintiff must show that he was prejudiced in a criminal appeal, in a post-conviction proceeding, Id., or in a civil rights action in which he sought "to vindicate 'basic constitutional rights.'" Id. at 354 (quoting Woolf v. McDonnell, 418 U.S. 539, 579 (1974)).

In this case there is nothing to suggest that the plaintiff Garcia has been denied access to the Courts.  Although Garcia asserts that the law library and its services are inadequate at institutions operated by the Broward Sheriff's Office, he has not alleged a single instance illustrating the kind of prejudice required under Bounds v. Smith, Lewis v. Casey, and their progeny.

Gacia's claims concerning the restrictions on the number of hours of direct access to law library facilities, his allegations concerning lack of assistance from inmate law clerks trained to draft pleadings and motions, and his allegations concerning restrictions on photocopying, and lack of adequate legal books in the law library, therefore are subject to dismissal pursuant to §§1915(e)(2)(B)(ii) and 1915A(b)(1).

E. Commissary

Finally, there is the plaintiff's claim that items offered in the commissary are sold at prices exceeding the "fair market value" outside the jail.

The plaintiff also alleges that packages containing multiple units of an item are opened and the contents are sold individually,

20

although they were not intended by the manufacturer to be offered for resale as individual items. These allegations, without more, do not state a constitutional claim, and are subject to dismissal under §§1915(e)(2)(B)(ii) and 1915A(b)(1).

### IV. Conclusion

It is therefore recommended that: 1) as to all claims against all defendants, the complaint be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted; and 2) this case be closed.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: *August 30, 2000*

*Charlene H Sonrino*
UNITED STATES MAGISTRATE JUDGE

cc:  Richard G. Garcia, Pro Se
     DC# D92567
     Century Correctional Institution
     400 Tedder Road
     Century, FL 32535-3655

21